# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**MICKEY TAYLOR (#388969)**            **CIVIL ACTION NO.**

**VERSUS**            **19-200-JWD-SDJ**

**UNKNOWN LOLLIS, ET AL.**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on July 26, 2021.

*/s/ Scott D. Johnson*

**SCOTT D. JOHNSON**
**UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

MICKEY TAYLOR (#388969)                     CIVIL ACTION NO.

VERSUS                                      19-200-JWD-SDJ

UNKNOWN LOLLIS, ET AL.

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court is a Motion for Summary Judgment filed by Defendants Unknown Kelly and Unknown Lollis.[1] The Motion is opposed.[2] For the following reasons, the undersigned recommends the Motion be granted and that the unserved Defendants, Brown, Groom, and Washington, be dismissed for failure of Plaintiff to timely effect service.

### I. Background

Plaintiff Mickey Taylor, who is representing himself and is confined at the Elayn Hunt Correctional Center in St. Gabriel, Louisiana, instituted this action against Lollis, Kelly, Brown, Groom, and Washington pursuant to 42 U.S.C. § 1983, alleging that on July 26, 2018, these Defendants violated his right to be free from cruel and unusual punishment resulting from the alleged use of excessive force.[3] Taylor specifically alleges that on July 26, 2018, Lollis approached Taylor's cell with another inmate and advised Taylor he would be sharing a cell with that inmate.[4] Taylor objected, but Lollis proceeded to place the other inmate in Taylor's cell anyway.[5] He then grabbed Taylor, pulled him out of the cell, and a struggle between Lollis and Taylor began.[6] Taylor

---

[1] R. Doc. 31. Kelly and Lollis are the only Defendants who have been served in this action. As discussed below, the undersigned recommends dismissal of the unserved Defendants, Unknown Brown, Unknown Groom, and Unknown Washington, for failure to serve.
[2] R. Doc. 33. Plaintiff has styled this document, in part, as an opposition, and in part seeking other various relief from the Court. The Court construes the document as an opposition. Though the Court provided Plaintiff with an extension of time to file an opposition, he filed no other timely opposition to the Motion. R. Doc. 35.
[3] R. Doc. 1.
[4] R. Doc. 1, p. 3.
[5] R. Doc. 1, p. 3.
[6] R. Doc. 1, p. 3.

alleges that all Defendants participated in a "beat down" of Taylor once he was pulled from the cell.[7] At some point during the altercation, while Brown, Groom, and Washington were holding Taylor down, Kelly proceeded to spray Taylor in the face with chemical agent, and Lollis punched and kicked Taylor in the "ribs, back, face, and head."[8] After the altercation, Taylor was placed back in his cell.[9] Taylor alleges that after the altercation, Lollis returned to Taylor's cell, sprayed him with chemical agent "for a long period of time," and then left Plaintiff in the cell with no relief for approximately 30 minutes.[10] Thereafter, Lollis allowed Taylor to shower, and after approximately four hours, Taylor was seen by medical staff.[11] Plaintiff seeks monetary and injunctive relief.[12]

## II. Law & Analysis

### a. Summary Judgment Should be Granted in Favor of Defendants Kelly and Lollis

#### i. Standard of Review

Summary judgment is appropriate where there is no genuine disputed issue as to any material fact, such that the moving party is entitled to judgment as a matter of law.[13] A party moving for summary judgment must inform the court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, that show that there is no such genuine issue of material fact.[14] If the moving party carries its burden of proof under Rule 56, the opposing party must direct the court's attention

---

[7] R. Doc. 1, pp. 3 & 5.
[8] R. Doc. 1, p. 5.
[9] R. Doc. 1, p. 5.
[10] R. Doc. 1, p. 5.
[11] R. Doc. 1, p. 5.
[12] R. Doc. 1, pp. 6-7.
[13] Rule 56, Federal Rules of Civil Procedure. *See also, Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).
[14] *Celotex Corp.*, 477 U.S. at 323.

to specific evidence in the record which demonstrates that the non-moving party can satisfy a reasonable jury that it is entitled to a verdict in its favor.[15] Summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.[16] In resolving a motion for summary judgment, the court must review the facts and inferences in the light most favorable to the non-moving party and may not evaluate the credibility of witnesses, weigh the evidence, or resolve material factual disputes.[17]

### ii. Defendants are Entitled to Qualified Immunity

Defendants have asserted they are entitled to qualified immunity.[18] The assertion of the qualified immunity defense alters the summary judgment burden of proof.[19] Once a defendant pleads qualified immunity, the burden shifts to the plaintiff, who "must rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law and that genuine issues of material fact exist regarding the reasonableness of the official's conduct."[20] "The plaintiff bears the burden of negating the defense and cannot rest on conclusory allegations and assertions but must demonstrate genuine issues of material fact regarding the reasonableness of the officer's conduct."[21] Accordingly, the Court must examine the evidence to determine whether there are any genuine issues of material fact regarding Plaintiff's claim of excessive force.

Force is considered excessive and violates the Eighth Amendment of the United States Constitution if it is applied maliciously and sadistically for the purpose of causing harm rather than

---

[15] *Anderson*, 477 U.S. at 248.
[16] *Celotex Corp.*, 477 U.S. at 323.
[17] *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).
[18] R. Doc. 31-1, pp. 4-14
[19] *Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005).
[20] *Gates v. Texas Department of Protective and Regulatory Services*, 537 F.3d 404, 419 (5th Cir. 2008), (citing *Michalik v. Hermann*, 422 F.3d at 262).
[21] *Michalik*, 422 F.3d at 262.

in a good faith effort to maintain or restore discipline.[22] "An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury."[23] The Eighth Amendment's prohibition against cruel and unusual punishment, however, necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that such force is not "repugnant to the conscience of mankind."[24] Factors to be considered in determining whether an alleged use of force is excessive include the extent of injury sustained, if any; the need for the application of force; the relationship between the need for force and the amount of force utilized; the threat reasonably perceived by prison officials; and any efforts made to temper the severity of a forceful response.[25]

The competent summary judgment evidence demonstrates that on July 26, 2018, Lollis, Kelly, and Brown were making rounds and entered Taylor's tier in order to place another offender in the cell with Taylor.[26] Lollis gave Taylor a direct verbal order to come to the bars to be restrained because he was receiving a new cellmate.[27] Lollis restrained Taylor, but once the cell door was opened, Taylor ran out of the cell, freed himself from the restraints, and acted in a hostile manner.[28] Taylor began swinging as if he was going to strike Lollis.[29] Lollis then stepped back, brought Taylor to the ground, and restrained him to regain order and control.[30] Kelly assisted Lollis in restraining Taylor because Taylor resisted.[31] Lollis and Kelly did not hit, kick, punch, strike, stomp, or beat Taylor in any way, nor did Lollis or Kelly witness any other officer perform any

---

[22] *Wilkins v. Gaddy,* 559 U.S. 34, 37 (2010), (quoting *Hudson v. McMillian,* 503 U.S. 1, 7 (1992)).
[23] *Wilkins*, 559 U.S. at 38.
[24] *Hudson*, 503 U.S. at 10.
[25] *Id.* at 7.
[26] R. Docs. 31-4, p. 1; 31-5, p. 1; 31-6, p. 3.
[27] R. Doc. 31-4, p. 1.
[28] R. Docs. 31-4, p. 2; 31-5, p. 1.
[29] R. Doc. 31-4, p. 2.
[30] R. Doc. 31-4, p. 2.
[31] R. Docs. 31-4, p. 3; 31-5, p.2.

4

such act.[32] Once Taylor was restrained, he was placed back in his cell, and the restraints were removed.[33]

Thereafter, Taylor threw human waste out of his cell, so Taylor was ordered to, again, approach the bars to be restrained.[34] Taylor refused all orders, so Lollis, retrieved a can of chemical agent.[35] Lollis returned to the cell and gave several direct verbal orders for Taylor to approach the bars to be restrained, but Taylor refused all orders.[36] As a result of Taylor's continued refusal, Lollis administered the minimum amount of chemical agent necessary to gain compliance.[37] After chemical agent was administered, Taylor complied with orders and was restrained and taken to the shower to rid himself of the chemical agent and see medical staff.[38] As a result of the incident, Taylor had some swelling on his left cheek.[39] An x-ray was taken of Taylor's facial bones after the incident, and no fracture or dislocation was found—the results of the x-ray were "normal."[40]

Taylor has failed to come forward with any evidence sufficient to demonstrate that there are genuine issues of material fact that exist regarding the reasonableness of the use of force utilized on July 26, 2018. Thus, though Plaintiff's allegations on their face state a claim for excessive force, Taylor may not rest on "mere allegations contained in the pleadings to demonstrate a genuine issue of material fact."[41] "Even pro se litigants may not oppose summary judgment motions with unsworn materials."[42] Here, Taylor has failed to submit any competent

---

[32] R. Docs. 31-4, p. 2; 31-5, p. 2.
[33] R. Docs. 31-4, p. 3; 31-5, p.2.
[34] R. Docs. 31-4, p. 3; 31-5, p. 2.
[35] R. Docs. 31-4, p. 3; 31-5, p. 3.
[36] R. Docs. 31-4, p. 3; 31-5, p. 3.
[37] R. Docs. 31-4, p. 4; 31-5, p. 3.
[38] R. Docs. 31-4, p. 4; 31-5, p. 3. Taylor was seen by medical staff on the same day as the incident. R. Doc. 31-8, pp. 6-7.
[39] R. Docs. 31-8, pp. 4-5.
[40] R. Docs. 31-8, p. 2.
[41] *Frazier v. Keith*, 707 Fed. Appx. 823, 825 (5th Cir. 2018).
[42] *Turner v. Baird*, 707 Fed. Appx. 290, 291 (5th Cir. 2017) (citing *Gordon v. Watson*, 622 F.2d 120, 123 (5th Cir. 1980).

5

summary judgment evidence to refute the evidence submitted by Defendants and has failed to even submit an opposition to the motion.

Based upon the competent summary judgment evidence presented, only minimal injury was sustained.[43] Further, both instances wherein force was used—the initial restraint and the use of chemical spray once Taylor was back in his cell—were necessary to regain control.[44] The evidence demonstrates that Taylor ran from his cell and acted in a hostile manner towards Lollis and Kelly.[45] The Court cannot say that the force that was used to subdue Taylor to restrain him and return him to his cell was excessive in this circumstance.[46] Regarding the use of chemical spray, Taylor was given "several" orders to come to the bars to be restrained before force was utilized at all.[47] Under these circumstances, the Court cannot conclude that the actions of Lollis and Kelly violated the Eighth Amendment.[48]

Moreover, courts have long recognized that great deference is due to prison officials who are dealing with potentially dangerous situations, and "prison officials often must make their decisions 'in haste, under pressure, and frequently without the luxury of a second chance.'"[49] Because the summary judgment evidence demonstrates that the Defendants' conduct did not

---

[43] R. Docs. 31-8, pp. 4-5.
[44] R. Docs. 31-4 & 31-5.
[45] R. Docs. 31-4, & 31-5.
[46] *See Carrier v. McKnight*, No. , 2017 WL 2533529, at *2, 4 (W.D. Tex. June 9, 2017) (no excessive force where inmate ran from his cell into booking area and a taser was used to subdue him).
[47] *See* R. Docs. 31-4 & 31-5.
[48] Though, based on the evidence, the throwing of human waste may not have posed an immediate threat to security, "that is not the only type of threat which must be considered." *See Jackson v. Cleveland*, No. 20-2247, 2021 WL 1269587, at *8 (E.D. La. March 8, 2021) (though disobedience may not pose an immediate physical threat, "if ignored without consequence, [it] can obviously embolden other prisoners to misbehave, thereby disrupting prison order and security."). *See also Martin v. Seal*, No. 11-726, 2014 WL 2890125, at *6 (E.D. La. June 25, 2014); *Lara-Haynes v. Garcia*, No. 19-56, 2021 WL 295841, at *6-7 (N.D. Tex. Jan. 6, 2021) (three strikes with a closed fist when the plaintiff was in the process of assaulting the defendant by spitting on him and lunging towards him was not excessive).
[49] *Lawrence v. Knighten*, 30 F.3d 1490, *2 (5th Cir. 1994) (citing *Whitley v. Albers*, 475 U.S. 312, 320 (1986).

violate Taylor's constitutional rights, Defendants are entitled to summary judgment, and Taylor's claims against Lollis and Kelly should be dismissed with prejudice.[50]

### b. Plaintiff's Claims Against Brown, Groom, and Washington Should be Dismissed for Failure of Plaintiff to Timely Effect Service

Fed. R. Civ. P. 4(m) provides for dismissal of an action without prejudice if a plaintiff fails to serve within 90 days after the complaint is filed. Local Civil Rule 41(b)(1)(A) also provides that "[a] civil action may be dismissed by the Court for lack of prosecution…[w]here no service of process has been made within 90 days after filing of the complaint." This suit was instituted on April 1, 2019, and service was ordered on July 31, 2019.[51] The Court issued the first order to show cause regarding service on April 6, 2020, because, at that point, no Defendants had been served.[52] Because it appeared that Taylor was perplexed regarding how to effect service upon the Defendants, the Court granted Plaintiff an extension of time to serve the Defendants and reissued summons for all Defendants.[53] Kelly and Lollis were served on July 15, 2020, but the service receipt that was returned clearly indicated that Brown, Groom, and Washington were not served.[54]

---

[50] To the extent Taylor has attempted to bring a claim for failure to intervene or protect against either Kelly or Lollis, those claims must also fail because, of logical necessity, the existence of a constitutional violation is an absolute prerequisite to a failure to intervene claim, and the bystander must *know* that his fellow officer his violating an individual's constitutional rights. *See Whitley v. Hale*, 726 F.3d 631, 646 (5th Cir. 2013) (citing *Hale v. Townley*, 45 F.3d 914, 916 (5th Cir. 1995)); *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013). Because the summary judgment evidence demonstrates that excessive force was not used, any failure to intervene or protect claim fails. Additionally, though Taylor alleges he was not allowed to shower after the incident, the summary judgment evidence indicates he was taken to shower immediately after. *See* R. Doc. 31-4. Even if Taylor was not provided with a shower, that fact would still not state a claim for deliberate indifference. *See Pea v. Cain*, No. 12-779, 2014 WL 268696, *7, n. 7 (M.D. La., Jan. 23, 2014) ("a failure to allow an inmate to shower after an application of irritant spray is not the type of wrongdoing that rises to the level of deliberate indifference.") (citing *Roach v. Caddo Parish Sheriff's Dept.*, No. 07-364, 2010 WL 420068 (W.D. La., Jan. 29, 2010); *Dufrene v. Tuner*, Civil Action No. 05-2066, 2006 WL 2620091 (W.D. La., Aug. 14, 2006). Finally, the summary judgment evidence demonstrates Taylor was seen by medical personnel approximately four hours after the incident (R. Doc. 31-8, p. 5), so to the extent Taylor attempted to make a claim for deliberate indifference to a serious medical need, he cannot do so because there is no evidence that this short delay caused Taylor any harm, much less substantial harm. *See O'Bryant v. Culpepper*, 214 F.3d 1350 (5th Cir. 2000) (no deliberate indifference where the plaintiff was injured on a Saturday and did not receive treatment until the following Thursday because the plaintiff could not show that the delay caused substantial harm).
[51] R. Docs. 1 & 8.
[52] R. Doc. 18.
[53] R. Docs. 21 & 22.
[54] R. Doc. 24.

7

Accordingly, on December 30, 2020, the Court issued another show cause order directing Taylor to show cause as to why his claims against Brown, Groom, and Washington should not be dismissed for failure to serve.[55] Taylor has failed to respond to this show cause order, and Brown, Groom, and Washington have yet to be served.

To avoid dismissal, Taylor must show good cause for failing to serve, and, if good cause is shown, the Court must extend the time for service.[56] To determine whether good cause exists, the Court looks at the actions of the plaintiff during the relevant time period.[57] A determination whether a plaintiff has made a sufficient showing of good cause "is necessarily fact-sensitive" and depends on the particular circumstances of the case.[58] At a minimum, in order to show good cause, "the plaintiff must demonstrate at least as much as would be required to show excusable neglect, as to which simple inadvertence or mistake of counsel or ignorance of the rules usually do not suffice."[59]

Taylor has wholly failed to respond to the show cause order. However, even if the plaintiff lacks good cause, the Court may extend the time for service.[60] Such an extension may be warranted "if the applicable statute of limitations would bar the refiled action."[61] Here, because Plaintiff complains of events occurring in July 2018, dismissal of this Complaint without prejudice will likely have the effect of a dismissal with prejudice, given that the events giving rise to the complaint occurred nearly two years ago. Accordingly, the Court must apply a heightened standard to determine whether this case should be dismissed.

---

[55] R. Doc. 32.
[56] *Thompson v. Brown*, 91 F.3d 20, 21 (5th Cir. 1996).
[57] *Winters v. Teledyne Movible Offshore, Inc.*, 776 F.2d 1304, 1306(5th Cir. 1985) (quoting Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1165 (1969)).
[58] *Lindsey v. United States Railroad Retirement Board*, 101 F.3d 444, 446 (5th Cir. 1996).
[59] *Id.*
[60] *Thompson*, 91 F.3d at 21.
[61] *Milan v. USAA General Indem. Co.*, 546 F.3d 321, 325 (5th Cir. 2008) (citing Fed. R. Civ. P. 4(m) advisory committee's note (1993)).

Dismissal with prejudice "is warranted only where a clear record of delay or contumacious conduct by the plaintiff exists and a lesser sanction would not better serve the interests of justice."[62] Further, one of the following three factors should be present: "(1) delay caused by [the] plaintiff himself and not his attorney; (2) actual prejudice to the defendant; or (3) delay caused by intentional conduct." Here, the delay is caused solely due to Plaintiff's inaction. Taylor was placed on notice of the defects in service to Brown, Groom, and Washington by July 15, 2020, but over one year, later, Taylor has failed to take any action to remedy the defects in service, despite the issuance of a show cause order by this Court.[63] Accordingly, Brown, Groom, and Washington should be dismissed for failure of Taylor to timely effect service upon these Defendants.

### c. Supplemental Jurisdiction Over Potential State Law Claims Should be Denied

Insofar as Plaintiff seeks to have this Court exercise supplemental jurisdiction over potential state law claims, this Court should decline to do so. A district court is authorized to decline supplemental jurisdiction over such claims if the claims raise novel or complex issues of state law, if the claims substantially predominate over claims over which the district court has original jurisdiction, if the district court has dismissed all claims over which it had original jurisdiction, or for other compelling reasons.[64] Since it is recommended that Taylor's federal claims be dismissed, it is appropriate for the Court to decline to exercise supplemental jurisdiction over any potential state law claims.

---

[62] *Milan*, 546 F.3d at 326 (internal quotation marks and citations omitted).
[63] R. Docs. 24 & 32.
[64] 28 U.S.C. § 1367.

**RECOMMENDATION**

**IT IS RECOMMENDED** that the exercise of supplemental jurisdiction be declined, that the Motion for Summary Judgment filed by Unknown Kelly and Unknown Lollis be **GRANTED,** and that Taylor's claims against Kelly and Lollis be **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER RECOMMENDED** that Taylor's claims against Brown, Groom, and Washington be **DISMISSED WITH PREJUDICE** for failure of Taylor to timely effect service against these Defendants and that this case be **CLOSED**.

Signed in Baton Rouge, Louisiana, on July 26, 2021.

**SCOTT D. JOHNSON**
**UNITED STATES MAGISTRATE JUDGE**